1  Marc Zemel
Katelyn Kinn
2  SMITH & LOWNEY, PLLC
2317 East John Street
3  Seattle, Washington 98112
(206) 860-2883
4
Attorneys for Plaintiff
5

6

7                    UNITED STATES DISTRICT COURT
8                   WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
9
   WASTE ACTION PROJECT,                    )
10                                           )
                   Plaintiff,                )
11  v.                                       )
                                             )        COMPLAINT
12  ALLFLIGHT CORPORATION,                   )
                                             )
13                  Defendant.               )
   _____          )
14

15              I.      INTRODUCTION

16        1.      This action is a citizen suit brought under Section 505 of the Clean Water Act

17  ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Waste Action Project, seeks declaratory

18  judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including

19  attorneys' and expert witnesses' fees, for Defendant Allflight Corporation's (Allflight) repeated

20  and ongoing violations of the terms and conditions of its National Pollutant Discharge

21  Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants

22  from Allflight's facility in Kent, Washington to navigable waters.

23

24  COMPLAINT - 1

## II.    JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Waste Action Project's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Waste Action Project requests.

3.      Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Waste Action Project notified Allflight of its violations of the CWA and of Waste Action Project's intent to sue under the CWA by letter dated and postmarked September 26, 2025 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as <u>Exhibit 1</u>. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Waste Action Project notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Allflight by mailing copies of the Notice Letter to these individuals on September 26, 2025.

4.      At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.      The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6.      At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

COMPLAINT - 2

7.      The source of the violations complained of is in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.    PARTIES

8.      Waste Action Project is suing on behalf of itself and its members.

9.      Waste Action Project is a non-profit corporation organized under the laws of the state of Washington. Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Waste Action Project is a membership organization and has at least one member who is injured by Allflight's violations.

10.     Waste Action Project has representational standing to bring this action. Waste Action Project's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Allflight's facility, on water quality and aquatic species and wildlife that Waste Action Project's members observe, study, use, and enjoy. Waste Action Project's members are further concerned about the effects of discharges from Allflight's facility on human health. In addition, discharges from Allflight's facility lessen Waste Action Project's members' aesthetic enjoyment of nearby areas. Waste Action Project has members who live, work, fish, and recreate around or use Mill Creek, the Green River, and the Duwamish River which are affected by Allflight's discharges. Waste Action Project's members' concerns about the effects of Allflight's discharges are aggravated by Allflight's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Waste Action Project and its members

COMPLAINT - 3

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1   have been, are being, and will be adversely affected by Allflight's violations of the CWA. The

2   relief sought in this lawsuit can redress the injuries to these interests.

3         11.     For example, one member of Waste Action Project has lived in Seattle's South

4   Park neighborhood, just a few blocks from the Duwamish River, for the past 8 years. This

5   member owns kayaks, which he and his partner regularly walk down to the Duwamish River to

6   launch at Duwamish Waterway Park and paddle on the river. Along with his family, including

7   his partner, two young children, and their dog, he walks down to his neighborhood Duwamish

8   River shoreline parks about twice weekly, including Duwamish Waterway Park and the river

9   access point at the end of S Elmgrove St. He also regularly brings his family to visit Duwamish

10   River People's Park. During these park visits, this member enjoys viewing wildlife including

11   Herons, Osprey, seals, and migrating salmon. This member attends semi-annual community

12   events including the Duwamish Alive! river cleanup at həʔapus Village Park and Shoreline

13   Habitat and the Duwamish River Festival at both Duwamish Waterway Park and more recently

14   at Duwamish River People's Park, each which include shoreline activities and kayaking on the

15   river. He also enjoys biking on the Green River trail and the many opportunities to view the

16   Green-Duwamish watershed that provides. These uses are downstream of Allflight's discharges.

17   This member is aware that Allflight discharges elevated levels of zinc, turbidity, and copper to a

18   tributary of the Duwamish River on a regular basis with its stormwater and violates its permit.

19   This member reasonably worries about the adverse impacts of Allflight's discharges and

20   violations on the people, dogs, fish, and wildlife that use the river, and he feels deeply

21   concerned.

22         12.     This member has also been actively involved in the Lower Duwamish Waterway

23   Superfund Cleanup for nearly fifteen years, including advocating for stronger and longer-term

24   COMPLAINT - 4

cleanup solutions and facilitating community involvement in the cleanup. He understands that the Duwamish Waterway Superfund Cleanup plan requires source control for ongoing sources of pollutants to the river. This member reasonably worries that Allflight, which continues to discharge pollutants to a Duwamish River tributary during the active superfund cleanup, threatens the ability of the superfund cleanup plan to achieve long-term results.

13.    Defendant Allflight is a corporation authorized to conduct business under the laws of the state of Washington.

14.    Allflight operates a facility, located at or about 20014 70th Ave S, Kent, WA 98032 (referred to herein as the "facility").

## IV.    LEGAL BACKGROUND

15.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

16.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

17.    Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on December 2, 2024, effective January 1, 2025, and set to expire December 31, 2029 (the "2025 ISGP"). The previous permit was issued on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 ISGP"). The 2020 ISGP and 2025 ISGP (collectively, "the Permit"), contain

COMPLAINT - 5

substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

18.     The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.

## V.    FACTS

19.     Ecology granted Allflight coverage for the facility under the 2020 ISGP under Permit number WAR125326. Allflight was granted coverage under the 2025 ISGP under the same Permit number WAR125326.

20.     Allflight discharges stormwater and pollutants associated with industrial activity to Mill Creek, a tributary to the Green River, which flows into the Duwamish River.

21.     Allflight's facility is engaged in industrial activities and is approximately 2 acres, which is mostly impervious. Allflight's facility has at least one distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter Mill Creek.

COMPLAINT - 6

22.     Allflight has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), including conditions of the NPDES permit. *See* 33 U.S.C. §§ 1311(a) and 1342. Allflight's violations of the Permit and the CWA are set forth in sections I through VII of the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, Allflight has violated the Permit by violating water quality standards, violating AKART standards, failing to prepare and implement an adequate SWPPP, failing to implement BMPs to control water quality, violating visual monitoring requirements, failing to implement corrective actions, violating numeric effluent limitations, failing to record information, failing to retain records, and failing to report Permit violations.

23.     Allflight discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values and effluent limits established by the Permit, including the days on which Allflight collected samples with the results identified in Tables 1 and 2, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1 – Monitoring Point CB1/001 – Numeric Effluent Limit Violations and Benchmark Exceedances**

| Quarter in which sample collected | Turbidity<br><br>Benchmark: 25 NTU | Cu Concentration<br><br>Benchmark: 14 µg/L | Zn Concentration<br><br>Effluent Limit: 70 µg/L under 2020 Permit; 32.7 µg/L under 2025 Permit<br><br>Benchmark: 117 µg/L |
|---|---|---|---|
| 2nd Quarter 2021 | | | 95.7 µg/L |
| 4th Quarter 2021 | 29.7 NTU | | |
| 3rd Quarter 2022 | 28 | 27.3 µg/L | 205 |
| 4th Quarter 2022 | 39.5 | | 199 |
| 3rd Quarter 2023 | | | 71.8 |
| 2nd Quarter 2025 | | | 35 |

COMPLAINT - 7

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

| 3rd Quarter 2025 | | 63.5 |
| --- | --- | --- |

**Table 2 – Monitoring Point CB2/002 – Numeric Effluent Limitation Violations and Benchmark Exceedances**

| Quarter in which sample collected | Zn Concentration<br><br>Effluent Limit:<br>70 µg/L under 2020 Permit;<br>32.7 µg/L under 2025 Permit<br><br>Benchmark: 117 µg/L |
| --- | --- |
| 2nd Quarter 2024 | 130 µg/L<br>89.5 |
| 4th Quarter 2024 | 108 |
| 1st Quarter 2025 | 81.7 |
| 2nd Quarter 2025 | 38.9 |
| 3rd Quarter 2025 | 116 |

24.     Allflight attests that the stormwater samples identified in Tables 1 and 2 are representative of and accurately characterize the quality of stormwater discharges generated by Allflight's facility during the associated calendar quarters. The stormwater monitoring data provided in Tables 1 and 2 shows benchmark and effluent limit exceedances included in the stormwater monitoring results that Allflight submitted to Ecology.

25.     Allflight's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Condition S10.A of the Permits. Discharges from Allflight's facility contribute to the polluted conditions of the waters of the state, including the water quality standards of Mill Creek, Springbrook Creek, the Black River, the Green River, and the Duwamish River. Discharges from Allflight's facility contribute to the ecological impacts that result from the pollution of these waters and to Waste Action Project and its members' injuries resulting therefrom. These requirements and Allflight's violations thereof are described

COMPLAINT - 8

in detail in section I of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference.

26.    Allflight's exceedances of the benchmark and numeric effluent limitation values indicate that Allflight is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs. Allflight violated and continues to violate Conditions S10 and S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and Allflight's violations thereof are described in detail in section I and section II of the Notice Letter, attached as <u>Exhibit 1</u>, and incorporated herein by this reference, except for section II par. 8.

27.    Allflight has violated and continues to violate the monitoring requirements of the Condition S7 of the Permits. Allflight has violated visual monitoring requirements by failing to conduct Industrial Stormwater Monthly Inspections, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month for the last five years. Allflight's violations of the Permit's monitoring requirement are described in sections III of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and incorporated herein by this reference. These violations are reasonably likely to recur.

28.    Allflight triggered Level One Corrective Action requirements under the Permit for each benchmark exceedance identified in Tables 1 and 2 above. Allflight has violated the requirements of Condition S8.B of the Permits by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required

COMPLAINT - 9

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Tables 1 and 2 above. These Corrective Action requirements and Allflight's violations thereof are described in section IV.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

29.     Allflight triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Tables 1 and 2 above that occurred in any two quarters of a calendar year for the same pollutant parameter. Allflight has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Tables 1 and 2 above. These violations include but are not limited to Allflight's failure to perform Level Two Corrective Action requirements for turbidity and zinc triggered by its stormwater sampling during calendar year 2022. These corrective action requirements and Allflight's violations thereof are described in section IV.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

30.     Condition S6.C of the Permit provides for a numeric effluent limitation for zinc for Allflight because it discharges to Mill Creek, which is CWA §303(d)-listed for zinc, and it

COMPLAINT - 10

was assigned a site-specific effluent limitation by Ecology pursuant to Table 6, footnote g of the

Permit. Under the 2020 Permit, Defendant's discharges were subject to a maximum daily

effluent limitation of 70 µg/L for Zinc. Under the 2025 Permit, Defendant's discharges are

subject to a maximum daily effluent limitation of 32.7 µg/L for Zinc. Allflight has violated these

effluent limitations by discharging stormwater that contains elevated levels of zinc in excess of

the corresponding numeric effluent limitations, as indicated (in bold) in Tables 1 and 2, above.

These effluent limitation violations are described in section V of the Notice Letter, attached

hereto as Exhibit 1, and are incorporated herein by this reference. These violations are

reasonably likely to recur.

31.    Allflight has violated the recordkeeping requirements of Permit Condition S4.B.4

because Allflight does not record and retain specified information for each stormwater sample

taken, including the sample date and time, a notation describing if Allflight collected the sample

within the first 12 hours of stormwater discharge event, an explanation of why Allflight could

not collect a sample within the first 12 hours of a stormwater discharge event, the sample

location, method of sampling and of preservation, and the individual performing the sampling, as

required by the Permit Condition. These requirements and Allflight's violations thereof are

described in section VI.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated

herein by this reference. These violations are reasonably likely to recur.

32.    Allflight has violated the record keeping requirements of Permit Condition S9.D.

Allflight does not retain for a minimum of five years a copy of the current Permit, a copy of

Allflight's coverage letter, records of all sampling information, inspection reports including

required documentation, any other documentation of compliance with permit requirements, all

equipment calibration records, all BMP maintenance records, all original recordings for

COMPLAINT - 11

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and Allflight's violations thereof are described in section VI.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

33.     Condition S9.F of the Permits requires Allflight to take certain actions, including reporting to Ecology and immediately taking actions, in the event Allflight is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Allflight has violated these requirements of the Permit by failing to report and correct permit violations, including each and every time Allflight violated corrective action requirements as described above in paragraphs 26-27, and each and every time Allflight discharged stormwater with amounts of pollutants in excess of the Permit benchmarks and effluent limits as described in paragraphs 21 and 28 above. These violations are in section VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34.     A significant penalty should be imposed against Allflight under the penalty factors set forth in 33 U.S.C. § 1319(d).

35.     Allflight's violations were avoidable had Allflight been diligent in overseeing facility operations and maintenance.

36.     Allflight benefited economically as a consequence of its violations and failure to implement improvements at the facility.

COMPLAINT - 12

37.     Allflight's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI.     CAUSE OF ACTION

38.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

39.     Allflight's violations of its NPDES permit described herein and in the Notice Letter constitute violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

40.     No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

41.     Prior notice of violations and claims was provided to Allflight and others as required.

42.     These violations committed by Allflight are ongoing or are reasonably likely to reoccur. Any and all additional violations of the Permit and the CWA which occur after those described in Waste Action Project's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

43.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Allflight is likely to continue to violate the Permit and the CWA to the further injury of Waste Action Project, its members, and others.

COMPLAINT - 13

1

## VII.    RELIEF REQUESTED

2          Wherefore, Waste Action Project respectfully requests that this Court grant the following

3     relief:

4          A.      Issue a declaratory judgment that Allflight has violated and continues to be in

5     violation of the Permit and the CWA

6          B.      Enjoin Allflight from operating the facility in a manner that results in further

7     violations of the Permit and the CWA;

8          C.      Order Allflight to immediately develop and implement a SWPPP that complies

9     with the Permit at the facility;

10         D.      Order Allflight to allow Waste Action Project to participate in the development

11     and implementation of Allflight's SWPPP and compliance plan;

12         E.      Order Allflight to provide Waste Action Project, for a period beginning on the

13     date of the Court's Order and running for three years after Allflight achieves compliance with all

14     of the conditions of the Permit, with copies of all reports and other documents which Allflight

15     submits to Ecology regarding Allflight's coverage under the Permit at the facility at the time

16     these documents are submitted;

17         F.      Order Allflight to take specific actions to remediate the environmental harm

18     caused by its violations;

19         G.      Order Allflight to pay civil penalties of $66,712 per day of violation for each

20     violation committed by Allflight, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C.

21     §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

22

23

24     COMPLAINT - 14

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    H.    Award Waste Action Project its litigation expenses, including reasonable

2  attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. §

3  1365(d), and any other applicable authorization; and

4    I.    Award such other relief as this Court deems appropriate.

5

6    RESPECTFULLY SUBMITTED this 10th day of December, 2025,

7

8    Smith & Lowney, PLLC

9    By:    By: *s/Marc Zemel*
           Marc Zemel, WSBA #44325
           By: *s/Katelyn Kinn*
           Katelyn Kinn, WSBA #42686
           Attorneys for Plaintiff
           2317 E. John St.,
           Seattle, WA 98112
           Tel: (206) 860-2124
           Fax: (206) 860-4187
           E-mail: marc@smithandlowney.com,
           katelyn@smithandlowney.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  COMPLAINT - 15

# Exhibit 1

# SMITH & LOWNEY
## ── PLLC ──
## ATTORNEYS AT LAW

September 26, 2025

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Allflight
20014 70th Ave S
Kent, WA 98032-2355

Allflight Corporation
18321 Ventura Blvd Ste 400
Tarzana, CA 91356-4247

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Waste Action Project, P.O. Box 9281, Covington, WA 98042, (206) 849-5927.  Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Client's intent to file a citizen suit against Allflight Corporation ("Defendant") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Defendant's National Pollution Discharge Elimination System ("NPDES") permit.

Defendant was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020 and expired on December 31, 2024 under NPDES No. WAR125326 (the "2020 Permit"). Ecology granted Defendant coverage under the current iteration of the ISGP effective January 1, 2025, and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR125326.

Defendant has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020 Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 20014 70th Ave S, Kent, WA 98032 (the "facility") as described herein, to Mill Creek.  The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Defendant.



## I.    COMPLIANCE WITH STANDARDS.

Condition S10.C of the Permits requires Defendant to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs"). Defendant has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs, as evidenced by the elevated levels of pollutants in its discharge indicated in Tables 1 and 2, and as described below in this notice of intent to sue.

**Table 1 – Monitoring Point CB1/001 – Effluent Limit and Benchmark Exceedances**

| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | Cu Concentration (Benchmark 14 µg/L) | Zn Concentration (Effluent Limit 70 µg/L 2020; 32.7 µg/L 2025; Benchmark 117 µg/L) |
|---|---|---|---|
| 2nd Quarter 2021 | | | 95.7 µg/L |
| 4th Quarter 2021 | **29.7 NTU** | | |
| 3rd Quarter 2022 | **28 NTU** | **27.3 µg/L** | **205 µg/L** |
| 4th Quarter 2022 | **39.5 NTU** | | **199 µg/L** |
| 3rd Quarter 2023 | | | 71.8 µg/L |
| 2nd Quarter 2025 | | | 35 µg/L |

**Table 2 – Monitoring Point CB2/002 – Numeric Effluent Limitation Violations**

| Quarter in which sample collected | Zn Concentration (Effluent Limit 70 µg/L 2020; 32.7 µg/L 2025; Benchmark 117 µg/L) |
|---|---|
| 2nd Quarter 2024 | **130 µg/L** 89.5 µg/L |
| 4th Quarter 2024 | 108 µg/L |
| 1st Quarter 2025 | 81.7 µg/L |
| 2nd Quarter 2025 | 38.9 µg/L |

## II.    STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

Defendant is in violation of the Permits' SWPPP provisions as follows:

1.    Condition S3.A of the Permits requires Defendant to develop and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. Defendant has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

2. Condition S3.A of the Permits requires Defendant to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. Defendant has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented and has not been updated as necessary.

3. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A.2 of the Permits requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. Defendant's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4. Defendant's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities, as required.

5. Defendant's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the contributing stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, areas where industrial activity is conducted, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas and areas where equipment cleaning is conducted, locations where vehicles are parked or stored, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6. Defendant's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of material handled at the facility, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7. Defendant's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists

the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8. Defendant's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

9. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary or infeasible, and an alternative and demonstrably equivalent BMP is provided. Defendant is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10. Defendant's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task as well as a maintenance log for completing each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee and contractor/vendor training (including an overview of what is in the SWPPP who is responsible for maintaining the SWPPP, and its location onsite, how employees make a difference in complying with the SWPPP and their role in ensuring proper maintenance of BMPs, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, a log of the dates on which specific employees received training, and a report of all electronically performed trainings, as applicable); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a visual inspection report or checklist, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Defendant will comply with signature and record retention requirements, certification of compliance with the SWPPP and Permit, and all completed inspection reports).

11. Defendant's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

12. Defendant's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

13. Defendant's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

14. Defendant's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

15. Defendant's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, stormwater drainage systems, or discrete groundwater infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantitation levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III.    MONITORING AND REPORTING VIOLATIONS

The facility has at least one distinct point of discharge off-site located at its northwest corner, and it has collected stormwater samples from two points: CB1 and CB2 (since 2023).

### A.    Failure to Comply with Visual Monitoring Requirements

Conditions S7.A and B of the Permits require that monthly visual inspections be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges or illicit connections, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Once annually, dumpsters must be inspected for holes or defects.

Condition S7.C of the Permits requires that Defendant record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required.  The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Defendant plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Defendant is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.    CORRECTIVE ACTION VIOLATIONS

### A.    Violations of the Level One Requirements

Condition S8.B of the Permits requires Defendant take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Defendant to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits. Condition S8.B.3 of the 2020 Permit and S8.B.2 of the 2025 Permit requires Defendant to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; and total zinc 117 µg/L. Condition S5.B and Table 3 of the Permits establish the following additional benchmark for North American Industry Classification System (NAICS) code 336xxx that is applicable to Defendant: Petroleum Hydrocarbons (Diesel-range organics and heavy oils) 10 mg/L.

Defendant has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed (in bold) in Tables 1 and 2 above.

### B.    Violations of the Level Two Requirements

Condition S8.C of the Permits requires Defendant take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Defendant to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition

S3.A.5 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits.  Condition S8.C.4 of the Permits requires Defendant implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than June 30th of the following year (2025 Permit) or no later than August 31st of the following year (2020 Permit).

The Permits establish the benchmarks applicable to Defendant described in section IV.A of this notice of intent to sue letter.

Defendant has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in Tables 1 and 2 above, these violations include, but are not limited to, Defendant's failure to fulfill these obligations for turbidity and zinc triggered by its stormwater sampling during calendar year 2022.

## V.      EFFLUENT LIMITATION VIOLATIONS

Condition S6.C of the Permits requires that Permittees discharging to a "303(d)-listed" waterbody (Water Quality Category 5), either directly or indirectly through a stormwater drainage system, must comply with the applicable sampling requirements and numeric effluent limits in Table 6 of the Permits.  The "applicable sampling requirements and numeric effluent limits" means the sampling and effluent limits in Table 6 that correspond to the specific parameter(s) the receiving water is 303(d)-listed for at the time of permit coverage, or Total Suspended Solids (TSS) if the waterbody is 303(d)-listed for sediment quality at the time of permit coverage.

Defendant discharges to Mill Creek, which is 303(d)-listed for zinc. Under the 2020 Permit, Defendant's discharges were subject to a maximum daily effluent limitation of 70 µg/L for Zinc. Under the 2025 Permit, Defendant's discharges are subject to a maximum daily effluent limitation of 32.7 µg/L for Zinc. Defendant's 2020 and 2025 zinc effluent limits are site-specific and were assigned by Ecology. *See* Permits, Table 6, footnote g.

Defendant discharges stormwater that contains elevated levels of zinc in excess of the corresponding numeric effluent limitations, as indicated in the tables of effluent limitation violations below. Each and every one of these discharges is a separate violation of the Permits. These numeric effluent limitation violations also occurred each and every day over the past five years on which there is at least 0.1 inch of precipitation in a 24 hour period and are reasonably likely to recur.

**Table 3 – Monitoring Point CB 1/001 – Numeric Effluent Limitation Violations**

| Quarter in which sample collected | Zn Concentration (Effluent Limit 70 µg/L 2020; 32.7 µg/L 2025) |
|---|---|
| 2nd Quarter 2021 | 95.7 µg/L |
| 3rd Quarter 2022 | 205 µg/L |
| 4th Quarter 2022 | 199 µg/L |
| 3rd Quarter 2023 | 71.8 µg/L |
| 2nd Quarter 2025 | 35 µg/L |

**Table 4 – Monitoring Point CB 2/002 – Numeric Effluent Limitation Violations**

| Quarter in which sample collected | Zn Concentration (Effluent Limit 70 µg/L 2020; 32.7 µg/L 2025) |
|---|---|
| 2nd Quarter 2024 | 130 µg/L 89.5 µg/L |
| 4th Quarter 2024 | 108 µg/L |
| 1st Quarter 2025 | 81.7 µg/L |
| 2nd Quarter 2025 | 38.9 µg/L |

## VI.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.    Failure to Record Information

Condition S4.B.4 of the Permits requires Defendant record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Defendant collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Defendant could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. Defendant is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.    Failure to Retain Records

Condition S9.D of the 2020 Permits require Defendant to retain for a minimum of five years a copy of the current Permit, a copy of Defendant's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Defendant is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VII.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the Permits requires Defendant to take certain actions in the event Defendant is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit.  In such circumstances, Defendant must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Defendant must immediately notify the appropriate Ecology regional office of the failure to comply. Defendant must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Defendant became aware of the circumstances, unless Ecology requests an earlier submission.

Defendant routinely violates these requirements, including each and every time Defendant discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, as described in Tables 1 and 2, above; and each and every time Defendant exceeded the numeric effluent limitation, as specified in Tables 3 and 4, above.

Although Defendant sometimes submitted noncompliance reports to Ecology, they were not all timely or adequate. For example, Defendant submitted a noncompliance report to Ecology on July 25, 2025 concerning zinc effluent limit violations for its May 15, 2025 samples. The report was submitted more than 5 days after Defendant became aware of the reported noncompliance because Defendant's second quarter 2025 DMR was signed July 15, 2025. Other reports appear to contain inaccurate or conflicting information. For example, Defendant submitted a noncompliance report to Ecology on April 10, 2025, concerning a zinc effluent limit violation for samples it says were collected March 3, 2025. However, Defendant's first quarter 2025 DMR states the sample was collected February 24, 2025. The reports also lack required information. For example, the reports Defendant submitted on October 10, 2022 and October 6, 2023 do not include the exact time, as required by Condition S9.f.3.a., and do not state when the noncompliance will be corrected, as required by Condition S9.f.3.b.

These violations may endanger human health or the environment.

## VIII.    REQUEST FOR SWPPP

Pursuant to Condition S9.G of the Permits, Waste Action Project hereby requests that Defendant Allflight Corporation provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Defendant fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## IX.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Waste Action Project. These violations are ongoing. Waste Action Project intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4. In addition to civil penalties, Waste Action Project will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waste Action Project believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Defendant Allflight Corporation under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

Smith & Lowney, PLLC

By:     */s/Katelyn Kinn*
          Marc Zemel
          Katelyn Kinn

cc:     Lee Zeldin, Administrator, U.S. EPA
        Emma Pokon, Region 10 Administrator, U.S. EPA
        Casey Sixkiller, Director, Washington Department of Ecology
        Jimmy Wu, Registered Agent (20014 70th Ave S, Kent, WA 98032-2355)